## John Hancock & others *vs.* City of Boston.

Where parties, interested in the alteration of a street or highway, had actual notice of the proceedings, and attended and were heard concerning them, and have acquiesced therein for many years, a writ of *certiorari* to remove those proceedings will not be granted merely because it does not appear that they had the official notice prescribed by law ; nor because one of them was *non compos mentis,* and had no guardian.

Petition for a writ of *certiorari* to bring up the record of the town of Boston concerning the widening of Beacon Street. The petitioners alleged, that in the year 1815, said street was widened by the selectmen of Boston by taking a piece of land formerly owned by the late Governor Hancock, but then in the possession of his widow as part of the dower assigned to her in his estate, the reversionary interest therein belonging to the petitioners and others :   That though a part of the heirs of said Hancock conferred with said selectmen respecting the widening of said street, and objected to the whole proceeding, yet said selectmen, having been advised by counsel that said heirs could make no claim for damages, until after the determination of said widow's life estate, gave no notice to said heirs of their intended proceedings, and awarded them no compensation for the taking of said land, though it was of great value.

The petitioners further alleged, that during the whole of the proceedings aforesaid, and long before, Thomas Hancock, one of the owners of the reversionary interest in said land, was, and ever since has been, *non compos mentis,* and that he had no guardian, until several years after said proceedings were finished.   It was alleged, that said selectmen, in the proceedings aforesaid, acted under and by virtue of the statutes of 1799, *c.* 31, and 1804, *c.* 73, and that those proceedings were erroneous for want of notice to said heirs.

The present guardian of said Thomas Hancock was a party to this petition.

The special circumstances of the transaction complained of in the petition, as they appeared at the hearing, are stated by the chief justice.

*Greenleaf* and *Hancock,* for the petitioners.

Hancock & others *v.* City of Boston.

*J. Pickering,* (City Solicitor,) for the respondents.

SHAW, C. J.   A petition for a *certiorari* addresses itself to the sound judicial discretion of the court, under all the circumstances of each particular case.   The object of a *certiorari* is to inquire into and correct substantial errors, such as would be injurious to the rights of the petitioners ; and it will not be ordered merely because there are formal or technical errors, nor where the reversal of proceedings would lead to great injustice.

The petitioners, in the present case, object to the proceedings of the selectmen of Boston, in 1815, in widening Beacon Street, that it does not appear affirmatively by the minutes of the selectmen, a copy of which is produced, that the petitioners had notice of those proceedings, or that public notice was given.   The widening of Beacon Street took in a part of the Hancock estate, being the mansionhouse of the late Governor Hancock, and the lot in front and adjoining the same, then held by his widow, as her dower, and in which the petitioners had a reversionary interest, expectant upon the determination of that life estate.

It does not appear, that personal or public notice was given , but it does appear from the proceedings, that the selectmen met to take the subject into consideration at their room, and afterwards on the premises ; that they were there attended by several of the heirs, who are the present petitioners, and who therefore had notice in fact of the proceedings.

It appears, that at this and subsequent meetings, Ebenezer Hancock, John Hancock, and Samuel Spear, were admitted as parties interested, acting for and representing all the heirs of the late Governor Hancock ; their objections were received and considered, and their suggestions of alterations in the proposed plan of widening, so as to diminish the quantity of land to be taken, and diminish the damage to the estate, were taken into consideration and acted on, and to a certain extent adopted.   It appears, therefore, by the minutes, that all the heirs did appear by themselves or their representatives, and were fully heard upon all points on which they wished to be heard.   It is too late, therefore, to say that no notice was given.   According to the strict rule of the common law, in reference to legal process, one

who has appeared, and made defence upon the merits, cannot afterwards be heard to allege that he was not duly summoned.

One reason assigned for the extraordinary delay in applying for a *certiorari* is, that the selectmen took the opinion of an eminent counsellor, at the time, upon the question whether the reversioners, whilst the widow held a life estate in the premises as dower, could claim for damages, who advised that they could not. This opinion was undoubtedly incorrect, according to the decision of this court in the case of *Ellis* v. *Welch*, 6 Mass. 246, which had been previously made and published. But supposing the petitioners were made acquainted with that opinion, and were led to forbear making a claim for damages during the life time of the widow, it appears that her decease occurred in 1830, and no sufficient reason is given for the delay from that time to the present.

The question now is, whether there were such errors and irregularities in these proceedings as to justify the court in lending its aid to set aside and annul proceedings, which have stood a quarter of a century. The effect of issuing a writ of *certiorari*, and quashing these proceedings of the selectmen, would be to declare that land, which has been used as a public highway for twenty-five years, is now private property, and may be inclosed as such, after valuable improvements have been made upon adjoining estates both of the Commonwealth and of individual proprietors, adapted to, and made in reference to the existence of such highway. The important consideration, upon which all statutes of limitation, prescriptions, and bills of peace, are founded, is, that after such a lapse of time, after all the actors in the transaction are dead, or the facts have faded from their memories, it is impossible to prove what did in fact take place ; and this consideration has a direct application to a case like the present. A strong case not merely of irregularity, but of injustice in the proceedings, must be shown, to justify their reversal after such a lapse of time.

The only objection to the proceedings is, that regular and formal notice was not given to all persons concerned, and that

Thomas Hancock, one of the heirs, was *non compos mentis* and then had no guardian.

But it is manifest that most if not all the heirs in fact had notice, because several, and those perhaps most capable to represent the family, did in fact attend ; and it has been already shown that they had a full opportunity to make objections, propose alterations, claim damages, and do all acts which they could have done, had a more formal notice been given. This is no excuse for not giving notice, in ordinary cases, nor is it intended to show that notice was not necessary to the regularity of the proceedings ; but it has a strong tendency to show, that, in the particular case, the petitioners suffered no actual damage by the want of notice. Supposing they were deterred, by the alleged mistake of the law, from claiming damages ; would they not have been deterred, by the same cause, if they had received more formal notice ? The case supposes, that they knew of the acts of the selectmen, affecting their interest in the estate, but made no claim for damages, because they erroneously believed that such a claim would be premature. We cannot perceive that they would have been likely to take any other step, with formal and official notice, which they did not in fact take under the notice which they had.

But it has been strongly insisted that the proceedings were irregular and void, because they affected the reversionary interest of Thomas Hancock, who then was, and ever since has been, *non compos,* and had then no legal guardian, though one was appointed soon after. But we think such a principle cannot be maintained. Where public and official notice is given to all persons concerned, it would be most dangerous to hold, that because there is some one interested in some portion of the estate to be affected, who is under disability, the proceedings are null and void, and may be quashed at any subsequent time. No highway of any considerable extent, or any public improvement, extending over a considerable number of estates, could ever be safely made under such a principle. Such public and official notice must necessarily bind all interests. Nor is any practical injustice likely to be done by this means. If there are married

11 *

women, minors, and persons *non compos*, or under any disability, interested in such property, they will ordinarily have husbands, parents, brothers, or other friends, having a common interest or sympathy with them, who will either take care of their interests, or who will make the necessary representations to the judge of probate, and obtain the appointment of guardians, when it is necessary to the performance of official acts. In this very case, although Thomas Hancock was under disability, and incapable of acting for himself, yet his father and his brother were actually present before the selectmen, prepared to protect his interest as well as their own. These are the persons, who would be regarded as the friends and natural protectors of such a disabled person, and who would be looked to, to see that an official guardian should be appointed when necessary. Indeed the same brother, who was then present before the selectmen, now signs the petition as his guardian. We cannot perceive, therefore, that the interests of Thomas Hancock have suffered from the fact that official notice was not given ; and we are satisfied that, in point of law, if such notice had been given, the proceedings would not have been void, or liable to be quashed, because Thomas Hancock had a reversionary interest in the estate, and was under disability as a person *non compos*, without a guardian.

On the whole, without deciding whether the proceedings would in strict law be deemed void, because the minutes of the proceedings of the selectmen do not show an official notice given to persons interested, yet the court are all of opinion that, under the circumstances of this case, no injustice has been occasioned by the want of such notice, that notice *de facto* was had, that injustice might be done by quashing the proceedings after this great lapse of time and long acquiescence, and therefore that the petition must be dismissed.